UNITED STATES DISTRICT COURT
EASTERN DIVISION OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

PORFIRIO NEVADA-MARTINEZ,  )
et al.                     )
                           )
      Plaintiffs,          )        Civil Case No.
v.                         )        5:15-cv-239-JMH
                           )
WAEL AMHAD, et al.,        )        **MEMORANDUM OPINION**
                           )        **AND ORDER**
      Defendants.          )
                           )


***

        This matter is before the Court upon Defendants' Motion to
Dismiss [DE 28], Plaintiffs' Third Motion for Joinder of Plaintiffs
[DE 37], Plaintiffs' Fourth Motion for Leave to Amend Complaint
[DE 45], and Defendants' Motion to Strike Plaintiffs' Exhibits
from Response to Motion to Dismiss [DE 52].  The Court having
reviewed the motions, responses, and replies, and being otherwise
adequately advised, Plaintiffs' and Defendants' motions are ripe
for decision.  For the reasons set forth below, Defendants' Motion
to Strike Plaintiffs' Exhibits will be granted, Defendants' Motion
to Dismiss will be denied, Plaintiffs' Motion for Joinder will be
denied as moot, and Plaintiffs' Motion to Amend will be granted.

*Background*

        This case involves a putative class action brought by
Plaintiffs against Defendants, Wael Ahmad, Anna Garcia, and the

Ahmad Law Office, PLLC, regarding Defendants' representation of Plaintiffs during their removal proceedings before the Immigration Courts.    Plaintiffs allege that, when faced with a notice of removal from the United States, Defendants engaged in a scheme of filing baseless employment authorization documentation with the Department of Homeland Security ("DHS") in order to generate legal fees for the defendant attorneys and law firm.

Specifically, Plaintiffs allege that Defendants filed an Application for Non-Lawful Permanent Resident Cancellation of Removal ("Cancellation of Removal") via a Form 42B and filing fee with the DHS for each plaintiff, which is a defense to removal from the United States, for the specific purpose of generating a filing and fee receipt that could be then be used by Defendants to apply for and obtain employment authorization documentation and Social Security Numbers for their clients.   However, Plaintiffs allege that Defendants filed the 42B Cancellation of Removal forms with full knowledge that none of the individuals qualified for said relief[1] and without apprising the Immigration Court of the filing of the 42Bs with the DHS.    Based on the foregoing,

---

[1] The requirements to qualify for Cancellation of Removal pursuant to 8 U.S.C. § 1229b(b) are: (a) ten (10) years of continuance presence in the United States prior to service of a Notice to Appear in immigration proceedings; (b) good moral character; (c) no conviction for a disqualifying crime; and (d) the individual must have a spouse, parent or child who is a United States citizen or lawful permanent resident that would suffer extreme and extraordinary hardship if the individual was removed from the United States.   8 U.S.C. § 1229b(b)(1).

Plaintiffs have filed suit on behalf of themselves and seek to represent a class composed of similarly situated clients of Defendants who paid legal fees to Defendants who, unbeknownst to Plaintiffs, would file petitions to the U.S. Citizenship and Immigration Services ("USCIS"), a component of the DHS, and applications for Employment Authorizations, premised upon baseless 42B forms, all without the knowledge that they should not have obtained the benefits of the Employment Authorization cards. Plaintiffs assert claims for violations of RICO, fraud, breach of fiduciary duty, violations of the Kentucky Consumer Protection Act ("KCPA"), and unjust enrichment. [DE 21, Second Amended Complaint]. Plaintiffs also seek recovery of punitive damages as well as a declaration that Defendants terminate its practice of filing meritless 42Bs and Employment Authorizations and charging clients for said immigration services. *Id.*

On December 14, 2015, Defendants filed a Motion to Dismiss. [DE 28]. Based on various extensions of time for Plaintiffs to file their response [DE 31, 35], the motion to dismiss was not fully briefed and ripe for adjudication until April 13, 2016. In the meantime, on March 3, 2016, Plaintiff filed a Third Motion for Joinder to join additional plaintiffs to this action [DE 37] to which Defendants responded [DE 39] and to which Plaintiffs replied in further support [41]. Again, on April 1, 2016, Plaintiffs filed a Fourth Motion for Leave to Amend their Complaint. [DE 45].

3

The filing of an amended complaint generally moots a pending motion to dismiss. *Yates v. Applied Performance Techs., Inc.,* 205 F.R.D. 497, 499 (S.D. Ohio 2002). However, when the motion to amend only addresses a discrete issue, it may not moot the underlying motion to dismiss. *Pethtel v. Washington County Sheriff's Off.*, No. 2:06-CV-799, 2007 WL 2359765, at *5 (S.D. Ohio Aug. 16, 2007). Here, the Court finds that the fourth amended complaint is substantially identical to the second amended complaint, which is the subject of Defendants' Motion to Dismiss, because the fourth amended complaint merely designates additional parties, adds facts concerning dates each named plaintiff learned of the damages Defendants had caused and/or the dates Defendants' representation ceased for each named Plaintiff, and corrects typographical errors. As to the additional facts regarding dates plaintiffs learned of their damages, for the reasons stated below, the Court finds that the allegations made in Plaintiffs' second amended complaint to be timely pursuant to the relevant statutes of limitation, thus, any additional facts or attempts by Plaintiffs to cure deficiencies in their second amended complaint have no bearing on the Court's timeliness analysis. Therefore, the Court finds that Plaintiffs' motions to join [DE 37] and amend [DE 45] do not moot Defendants' motion to dismiss. Moreover, given the many delays that have occurred from the outset of this action caused, in large part, by Plaintiffs' continuous amendment of its

4

pleadings, rather than requiring Defendants to refile their motion to dismiss, the Court will first address Defendants' motion to dismiss Plaintiffs' second amended complaint [DE 28], discussing each of Plaintiffs' claims and Defendants' arguments in favor of dismissal in turn, and then will address Plaintiff's motion for joinder [DE 37] and motion to amend [DE 45].

   I.   Motion to Dismiss

   As an initial matter, Defendants have filed a Motion to Strike the exhibits from Plaintiffs' response to Defendants' Motion to Dismiss. [DE 52]. The Court is well aware that when evaluating a Motion to Dismiss, the Court may consider any document attached to or incorporated in the complaint that are central to the claims contained therein, and public documents of which the Court can take judicial notice, but may not consider any other documents without converting the motion into a motion for summary judgment. See Amini v. Oberlin College, 259 F.3d 493, 502 (6th Cir. 2001); Weiner v. Klais & Co., 108 F.3d 86, 88-89 (6th Cir. 1997). As such, the Court has confined its Rule 12(b)(6) inquiry to the four corners of the second amended complaint and documents attached thereto. Defendants' motion to strike will be granted.

   Despite Plaintiffs' claims which state otherwise, Defendants argue that this action is a legal malpractice case because each Plaintiff is a former client of Defendants who complain about an aspect of his or her legal representation by Defendants. [DE 18-

1, Defendants' Memorandum in Support of Motion to Dismiss]. As a result, Defendants argue that the one-year statute of limitation established by KRS 413.245, and applicable to professional negligence claims, governs this action, and because Plaintiffs fail to plead any actions by Defendants which occurred within one year of the filing of their Complaint, their case is untimely. *Id.* Furthermore, Defendants argue that, in addition to the temporal bar, Plaintiffs have failed to adequately state a cause of action for RICO, failed to plead the heightened standard for fraud, failed to adequately allege a breach of fiduciary duty, lack standing to bring a claim under the Kentucky Consumer Protection Act, and have failed to state a claim for unjust enrichment. *Id.* For all of these reasons, Defendants argue Plaintiffs' complaint should be dismissed in its entirety. *Id.*

   A. *Standard*

   A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the plaintiff's complaint. If the plaintiff fails to state a claim upon which relief can be granted, a court may grant the motion to dismiss. Fed. R. Civ. P. 12(b)(6). Rule 8(a)(2) states that, at a minimum, a pleading should contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court explained that in order to survive a Rule

6

12(b)(6), a complaint need not contain "detailed factual allegations," but must present something more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action's elements will not do." *Id.* at 555.

Although a court must accept as true all of the well-pleaded factual allegations contained in the complaint, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570), courts are not bound to accept conclusory allegations as true. *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265 (1986)). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555-56 (citations omitted). Under this standard, only a claim which is "plausible on its face" will survive dismissal. *Id.* at 570; *Tam Travel, Inc. v. Delta Airlines, Inc.*, 583 F.3d 896, 903 (6th Cir. 2009). "A claim is plausible when it contains facts that allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Ashcroft*, 556 U.S. at 678. If it appears beyond doubt that the plaintiff's complaint does not state facts sufficient to "state a claim to relief that is plausible on its face," then the claims must be dismissed. *Twombly,* 550 U.S. 544 at 570; *Weisbarth v. Geauga Park Dist.,* 499 F.3d 538, 542 (6th Cir. 2007).

### B. *Statute of Limitations of KRS 413.245*

Defendants' chief argument in support of their motion to dismiss is that the one-year statute of limitations for professional negligence claims set forth in KRS 413.245 applies to all of Plaintiffs' claims in this case because every allegation refers to acts and events which occurred during the attorney-client relationship between Plaintiffs and Defendants. [DE 28-1 at 4-7]. KRS 413.245 provides:

> Notwithstanding any other prescribed limitation of actions which might otherwise appear applicable, except those provided in KRS 413.140, a civil action, whether brought in tort or contract, arising out of any act or omission in rendering, or failing to render, professional services for others shall be brought within one (1) year from the date of the occurrence or from the date when the cause of action was, or reasonably should have been, discovered by the party injured. Time shall not commence against a party under legal disability until removal of the disability.

"Professional services" is defined as "any service rendered in a profession required to be licensed, administered and regulated as professions in the Commonwealth of Kentucky, except those professions governed by KRS 413.140." KRS 413.243. The Kentucky Supreme Court has held "that the claims brought by clients or former clients against attorneys for acts or omissions arising out of the rendition of professional services are governed exclusively by the one-year statute of limitation periods established by KRS 413.245." *Abel v. Austin*, 411 S.W.3d 728, 739 (Ky. 2013).

The Court finds that because Plaintiffs' claims for fraud (Count II), breach of fiduciary duty (Count III), and unjust enrichment (Count IV) all arise out of Defendants' acts or omission in "rendering, or failing to render, professional services" for Plaintiffs, specifically out of Defendants' representation of Plaintiffs during their immigration proceedings, the one-year statute of limitation contained in KRS 413.245 applies to those claims.  However, this does not end the Court's inquiry:  the next question is when did Plaintiffs' causes of action set forth in Counts II, III, and IV of the complaint accrue.

The second amended complaint alleges specific dates that Defendants made alleged fraudulent misrepresentations to Plaintiffs [DE 21 at 19-21].  Certain documents attached as Exhibits to the complaint also indicate the dates certain 42B forms were filed on behalf of Plaintiffs.  [DE 21, Exhibits C-F]. Defendants contend that because these dates do not fall within a one-year window of the filing of the complaint, Plaintiffs' claims are time-barred by KRS 413.245.  The Court disagrees.  The statute includes a discovery rule, that is, a claim arising out of an act or omission in rendering professional services must be brought either "within one (1) year from the date of occurrence *or from the date when the cause of action was, or reasonably should have been, discovered by the party injured.*  KRS 413.245.  Thus, contrary to Defendants' contentions, while the specific dates

referenced in the complaint reference the date of occurrence of Defendants' alleged wrongdoing, the dates do not refer to when Plaintiffs discovered Defendants' alleged negligent services or the existence of their claims.

Moreover, because the complaint does not facially show noncompliance with the limitations period, that is, the complaint does not suggest, on its face, that the claims were brought outside the statutory period pursuant to the discovery rule (i.e. the time when Plaintiffs, through the exercise of reasonable diligence, should have discovered the existence of their claims), and because it is entirely reasonably that Plaintiffs may not have discovered their claims until after August 17, 2014, the Court finds it inappropriate at this stage of the proceedings to dismiss the complaint as time-barred until the record on this issue can be further developed.  As Plaintiffs' briefing indicates, the application of the one-year statute of limitation pursuant to KRS 413.245 implicates factual questions as to when Plaintiffs discovered or should have discovered Defendants' alleged wrongdoing, and discovery is needed to determine when Plaintiffs became aware that Defendants' services led to their alleged injuries.  If, as Defendants maintain, the evidence shows that Plaintiffs discovered their injuries more than one year prior to the filing of the complaint, the court will revisit this critical issue on summary judgment.

As to Plaintiffs' RICO claim, despite Defendants' contention that the one-year statute of limitation of KRS 413.245 applies, the Court finds that a four-year statute of limitation applies based on the U.S. Supreme Court's holding in *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143, 143-44 (1987). In *Agency Holding*, the Supreme Court unequivocally explained the numerous reasons that civil RICO violations are subject to a uniform four-year statute of limitation rather than any number of various state limitation periods as follows:

> Because the predicate acts that may establish a civil RICO violation are far ranging and cannot be reduced to a single generic classification, and because important RICO concepts were unknown to common law, there is a need for a uniform limitations period for civil RICO in order to avoid intolerable uncertainty for parties and time-consuming litigation. The Clayton Act offers the closest analogy to civil RICO, in light of similarities in purpose and structure between the statutes, and the clear legislative intent to pattern RICO's civil enforcement provision on the Clayton Act's. Moreover, the Clayton Act provides a far closer analogy to RICO than any state statute. It is unlikely that Congress intended state "catchall" statutes of limitations to apply or that such statutes would fairly serve the federal interests vindicated by RICO, and, in those States that do not have catchalls, any selection of a state statute would be at odds with RICO's *sui generis* nature. RICO cases commonly involve interstate transactions, and the possibility of a multiplicity of applicable state limitations periods presents the dangers of forum shopping and of complex, expensive, and unnecessary litigation. Application of a uniform federal period also avoids the possibility that application of unduly short state periods would thwart the legislative purpose of providing an effective remedy.

*Agency Holding Corp.*, 483 U.S. at 143-44.  In addition, while Plaintiffs' claims of RICO violations relate to Defendants' professional legal services, the claims go further in that they include allegations that Defendants engaged in a "federal RICO pattern of racketeering activity" by "knowingly present[ing] 42Bs to the Department of Homeland Security's Texas Service Center for individuals who Defendants knew did not have the requisite maximum years of presence or qualifying family members and did so with full knowledge that the applications did not have any reasonable basis in law or fact." [DE 21 at 14-15].  For these reasons, the Court finds that Plaintiffs' RICO claims are not simple malpractice claims, and that the RICO claims are subject to a four-year statute of limitation, which "begins to run when the plaintiff knows or has reason of the RICO injury which is the basis of his action." *Coal-Mac, Inc. v. JRM Coal Co.*, 734 F. Supp. 499, 501 (E.D. Ky. 1990).  The Court finds that Plaintiffs have alleged RICO violations within the four-year statute of limitations, likewise, Plaintiffs' RICO claims may not be dismissed as untimely.  [DE 21 at 20-21, 21-1, 21-4, 21-5, 21-6].

As to Plaintiffs' claim for violations of the KCPA, the Court finds that the two-year statute of limitations set forth in KRS 367.220 controls.  A party alleging a violation of the KCPA "must bring such action within one (1) year after any action of the Attorney General has been terminated or within two (2) years after

12

the violation of KRS 367.170, whichever is later." KRS 367.220(5). *Bennett v. Ford Motor Co.*, No. 5:07-CV-115-R, 2008 WL 920745, at *2 (W.D. Ky. Apr. 3, 2008). Here, Plaintiffs allege that Defendants were offering legal services in violation of the KCPA within two years of the filing of the Complaint, that is, after August of 2013, thus, the Court finds that Plaintiffs' claims for violation of the KCPA (Count IV) may not be dismissed as untimely. [DE 21 at 20-21, 21-1, 21-4, 21-5, 21-6].

Having determined that Plaintiffs' claims may not be dismissed as untimely, the Court must determine whether Plaintiffs have stated a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) for each of their causes of action.

### C. Sufficiency of Claims

#### 1. RICO

In Count I of their complaint, Plaintiffs allege violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, for violation of 18 U.S.C. § 1962(c). [DE 21 at 14-18]. RICO provides a private right of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." 18 U.S.C. § 1964. Therefore, a civil RICO claim must set forth the following requirements to allege a violation of 18 U.S.C. § 1962(c): (1) conduct (2) of an enterprise (3) through a pattern (4) of

13

racketeering activity. *Alexander v. Rosen*, 804 F.3d 1203, 1207 (6th Cir. 2015)(quoting *Ouwinga v. Benistar 410 Plan Sevs., Inc.*, 694 F.3d 783, 791 (6th Cir. 2012)); *see also Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 404 (6th Cir. 2012). The "pattern" requires at least two acts of "racketeering activity," which activities are set forth in § 1961(1), that must occur within ten years of one another, that are related, and that threaten continuing activity. 18 U.S.C. § 1961(5); *H.J., Inc. v. Nw. Bell Tele. Co.*, 492 U.S. 229, 239 (1989); *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006).

Defendants move to dismiss Plaintiffs RICO claim, in part, on the basis that Plaintiffs have failed to adequately plead continuity. "The requirement of 'continuity,' or a threat of continuing criminal activity, ensures that RICO is limited to addressing Congress's primary concern in enacting the statute, i.e., long-term criminal conduct." *Vemco, Inc. v. Camardella*, 23 F.3d 129, 133-34 (6th Cir. 1994). "'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.*, 492 U.S. at 241.

The Court finds that Plaintiffs have adequately alleged closed-ended continuity. Closed-ended continuity may be demonstrated by proving a series of related predicate acts

14

extending over a substantial period of time. *Id.* at 242. Relying on 18 U.S.C. § 1546 for the predicate acts (i.e. fraud and misuse of visas, permits, and other documents) for the predicate offenses, Plaintiffs allege that Defendants have engaged in continuous racketeering over a span of at least three and half years by participating in and directing an ongoing pattern of filing baseless and fraudulent immigration forms through their enterprise, that is, the Amhad Law Office. [DE 21 at 14-18, 20-21, DE 21-1, 21-3, 21-4, 21-5, 21-6]. The Sixth Circuit has found that a series of related, predicate acts that span over three years constituted a period of closed-ended continuity. *Brown v. Cassens Transport Co.*, 546 F.3d 347, 355 (6th Cir. 2008). Likewise, this Court, too, finds that Defendants have adequately pleaded closed-end continuity in their complaint.

The Court finds that Plaintiffs have also sufficiently alleged the existence of open-ended continuity. Open-ended continuity refers to a set of predicate acts that poses a threat of continuing criminal conduct extending beyond the period in which the predicate acts were performed. *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 409-10 (6th Cir. 2012). The Supreme Court has explained that an open-ended period of continuity is stated when "the predicates are a regular way of conducting defendant's ongoing legitimate business." *H.J. Inc.*, 492 U.S. at 243. Plaintiffs allege that the legitimate business of Defendants

15

– holding themselves out to the community as a "knowledgeable Immigration Law Firm possessing the skills and knowledge to assist clients in removal proceedings and before the USCIS" – is regularly conducted by Defendants continuously and knowingly filing baseless immigration forms on behalf of individuals which contain false statements or which fail to contain any reasonable basis in law or fact. [DE 21 at 14-18]. Plaintiffs specifically allege that this conduct is ongoing throughout their complaint, and there is no indication in the complaint that Defendants alleged pattern of behavior will not continue indefinitely into the future. *Id.* at ¶¶ 56, 58, 61, 62, 64, 65, 71.

For the reasons stated above, Plaintiffs have adequately alleged a threat of continuing criminal activity and, therefore, have sufficiently alleged a continuous pattern of racketeering activity. Dismissal of Plaintiffs' allegations of violations of RICO pursuant to Rule 12(b)(6) on the basis of failure to plead continuity would be improper.

Defendants further argue that Plaintiffs' RICO claim must be dismissed on the basis that Plaintiffs have failed to adequately plead the existence of an enterprise. [DE 28-1 at 12]. "Enterprise" is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The RICO concept of an enterprise

16

is "obviously broad, encompassing 'any ... group of individuals associated in fact.'" *Boyle v. United States,* 556 U.S. 938 (2009) (quoting 18 U.S.C. § 1961(4)).

To be an association-in-fact enterprise, the enterprise must have a structure. *Id.* The structure "must have at least three...features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.* at 946. But "this organizational structure need not be hierarchical, can make decisions on an ad hoc basis, and does not require the members to have fixed roles." *Ouwinga,* 694 F.3d at 794. The plaintiff must simply show "a continuing unit that functions with a common purpose." *Boyle,* 556 U.S. at 948. Finally, "although the existence of an enterprise is a separate element that must be proved, the evidence used to prove the pattern of racketeering activity and the evidence establishing an enterprise 'may in particular cases coalesce.'" *Ouwinga,* 694 F.3d at 794 (quoting *Boyle,* 556 U.S. at 947.)

Following *Boyle* and *Ouwinga*, and taking the allegations in the complaint as true as it must, the Court finds that Plaintiffs have sufficiently pled an association-in-fact enterprise. Plaintiffs have pled that the enterprise has a purpose, that is, "filing immigration applications that have no basis in law or fact…for the purpose of generating profits for the Defendants."

17

[DE 21 at ¶70]. Plaintiffs have also sufficiently pled that Defendants shared various roles and relationships among themselves, including the filing of immigration and employment authorization and application forms on behalf of Plaintiffs. Finally, assuming Plaintiffs' allegations are true, then the enterprise existed long enough for it to accomplish its purpose.

For offenses under 18 U.S.C. § 1962, it is well settled, and Plaintiffs and Defendants agree, that the alleged RICO association in fact "enterprise" must be distinct from the alleged RICO "person." *In re ClassicStar Mare Lease Litigation*, 727 F.3d 473, 490 (6th Cir. 2013). [DE 28-1 at 12; DE 43 at 19]. Nevertheless, Defendants argue that Plaintiffs have failed to properly plead the distinctiveness element, and that "[a] RICO Plaintiff cannot circumvent the distinctiveness requirement by alleging a RICO enterprise consisting merely of a corporate defendant associating with its own employees or agents in the regular affairs of the corporation." [DE 38-1 at 13].

The Court finds Plaintiffs' allegations of the distinctiveness requirement in Count I to be a mixed bag. [DE 21 at 14-18]. On one hand, Plaintiffs sufficiently allege a distinction between the individual persons and the association in fact enterprise. In paragraph 68 of the Second Amended Complaint, Plaintiffs allege that "an organization that constituted an enterprise, as defined by 18 U.S.C. § 1961(4), to wit: a group of individuals associated

18

in fact, in that they operate and operated under the business
know[n] as Ahmad Law Office, which engages and engaged in, the
activities of which affected, interstate and foreign commerce."
[DE 21 at ¶68]. Paragraph 71 further alleges that "[t]he foregoing
conduct constitutes a violation of 18 U.S.C. § 1962 in that
Defendants Ahmad, Garcia and their employees participated and
directed an ongoing pattern of baseless and fraudulent immigration
filings in violation of 26 § U.S.C. 1546 through their enterprise
of Ahmad Law Office to the detriment of their clients, the United
States, and the Immigration Court. [DE 21 at ¶ 71]. On the other
hand, allegations concerning the RICO conduct by "Defendants" are
made throughout Count I, which the Court must assume includes all
three named Defendants in this action, with no distinction made
between the individual RICO defendants (Ahmad and Garcia), who may
be liable under § 1692, and the enterprise (the Ahmad Law Office),
who cannot be subject to RICO liability. [DE 21 at 14-18].
Furthermore, paragraph 69 of the Second Amended Complaint muddles
the distinction made in paragraphs 68 and 71 by stating as follows:
"The individuals and entities involved in the enterprise are Wael
Ahmad, Anna Garcia, and the Ahmad Law Office." [DE 21 at ¶69].

   Defendants argue that Plaintiffs have not only failed to
adequately plead distinction between the individuals persons and
the enterprise, but also that Plaintiffs cannot. Citing *Riverwoods
Chappaqua Corp. v. Marine Midland Bank, NA,* 30 F.3d 339 (2d Cir.

1994), Defendants argue that "[a] RICO Plaintiff cannot circumvent the distinctiveness requirement by alleging a RICO enterprise consisting merely of a corporate defendant associating with its own employees or agents in the regular affairs of the corporation." [DE 28-1 at 13].  However, in *Riverwoods*, Plaintiffs attempted to allege that the defendant bank was the RICO person and the RICO enterprise (along with its employees and agents), which the Second Circuit found impermissible.  *Riverwoods*, 30 F.d 339.  Here, the opposite is being asserted:  Plaintiffs are alleging that the defendants Ahmad and Garcia are both the RICO persons and also comprise the RICO association in fact enterprise, the Ahmad Law Office.  Pursuant to the Supreme Court's decision in *Cedric Kushner Promotions, Ltd. v. King*. 533 U.S. 158 (2001), the Court deems Plaintiffs' distinction between the RICO persons and association in fact enterprise to be sufficient.

In *Kushner*, the individual, Don King, a boxing promoter, was the president and sole shareholder of Don King Productions, a corporation.  *Kushner,* 533 U.S. 158.  Plaintiff, Cedric Kushner Promotions, Ltd., a corporation that promotes boxing matches, sued King as an individual, claiming he had conducted the boxing-related affairs of Don King Productions through a RICO scheme.  *Id.*  The District Court dismissed the plaintiff's complaint finding that it failed to meet the distinctiveness requirement.  The Second Circuit affirmed the dismissal holding that since it was undisputed that

Don King was an employee of Don King Productions, and that he was acting within the scope of his authority, there was no "person" distinct from the "enterprise," and § 1962 did not apply. *Id.* In an unanimous decision, the Supreme Court reversed the lower courts, concluding that the plaintiff could bring a RICO action against King for conducting the affairs of his wholly-owned corporation, the alleged RICO enterprise, through a pattern of racketeering activity. *Id.* at 166. Careful to distinguish from *Riverwoods*, the Court reasoned that "[t]he corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status" and could "find nothing in the statute that requires more 'separateness' than that." *Id.* Thus, while *Riverwoods* instructs that a corporate defendant may not be both a person and an enterprise, *Kushner* provides that the opposite is permissible, that is, an individual defendant or defendants may be both a person and a part of an enterprise. *Riverwoods*, 30 F.d 339; *Kushner,* 533 U.S. 158.

While *Kushner* is factually distinguishable from the present matter in that *Kushner* involved alleged conduct by individual corporate officers who managed a corporate enterprise whereas, here, an "association in fact" enterprise is alleged rather than a corporate entity, the Court finds the instant case to be more akin to *Kushner* than *Riverwoods*. As in *Kushner*, Plaintiffs have

alleged a legal distinction between the RICO persons (Ahmad and Garcia, that is, the employees of the Ahmad Law Office) and the RICO enterprise (the Ahmad Law Office). [DE 21 at ¶ 68, 71]. The Court believes this to be a fair reading of Plaintiffs' complaint and in line with the Sixth Circuit's interpretation of the distinctiveness requirement. *See In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 490-92 (6th Cir. 2013)("individual defendants are always distinct from corporate enterprises because they are legally distinct entities, even when those individuals own the corporations or act only on their behalf"); *Davis v. Mut. Life Ins. Co. of New York*, 6 F.3d 367, 378 (6th Cir. 1993)("Although...RICO forbids the imposition of liability where the enterprise is nothing more than a subdivision or a part of the person, the requirement does not run the other way. Indeed, RICO requires that the person be employed by or associated with the enterprise.").

Therefore, as to the individuals, Wael Ahmad and Anna Garcia, at this juncture, the Court finds that there are sufficient allegations to allow the RICO claim to proceed. Nevertheless, to allay any confusion and in light of the distinctiveness requirement of the RICO statute, the Court grants Plaintiffs leave to amend Count I to clarify that the Ahmad Law Office is not included as a RICO defendant, that is, to exclude the Ahmad Law Office from its

general reference to "Defendants" throughout Count I.[2]   The Court also grants Plaintiffs leave to amend the portion of their complaint (i.e. paragraph 69 of the Second Amended Complaint) to clarify the distinctiveness requirement between the individual persons and the association in fact enterprise as consistent with remainder of the complaint, including paragraphs 68 and 71.[3]

> ### 2. Fraud

Plaintiffs assert a claim for fraud in Count II of their complaint [DE 21 at 18-22], which Defendants argue must be dismissed because Plaintiffs have failed to adequately plead the heightened standard for fraud.[4]

In alleging fraud, Federal Rule of Civil Procedure 9(b) requires a party to state with particularity the circumstances constituting fraud.  Fed. R. Civ. P. 9(b); *see also Bennett v. MIS Corp.*, 607 F.3d 1076, 1100 (6th Cir. 2010).   To be pled with particularity, the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain

---

[2] Plaintiffs generally reference "Defendants" throughout Count I, however, the Ahmad Law Office, as the association in fact enterprise, cannot be a defendant under RICO.

[3]  Based on the totality of the complaint, the Court believes it is Plaintiffs' intent in paragraph 69 of the Second Amended Complaint to list, comprehensively, the individual persons and enterprises that form the basis of Plaintiff's RICO allegation.   Given, the distinctiveness requirement of the RICO statute, any confusion must be rectified.

[4] Defendants do not specify in its Motion to Dismiss what portions of Plaintifs' fraud claim are not pled with particularity – i.e. the who, what, when, where or why.

why the statements were fraudulent." *Indiana State Dist. Council of Laborers and Hod Carriers Pension and Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 942-43 (6th Cir. 2009) (quotation marks and citation omitted). In addition, a party must identify the "alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of [the other party]; and the injury resulting from the fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993) (quotation marks and citations omitted).

When faced with a motion to dismiss for failure to plead fraud "with particularity" as required by Rule 9(b) of the Federal Rules of Civil Procedure, "a court must factor in the policy of simplicity in pleading which the drafters of the Federal Rules codified in Rule 8" of the Federal Rules of Civil Procedure. *Michaels Bldg. Co. v. Ameritrust Co., N.A.,* 848 F.2d 674, 679 (6th Cir. 1988). Federal Rule of Civil Procedure 8 requires a "short and plain statement of the claim," and calls for "simple, concise, and direct" allegations. Thus, Rule 9(b)'s particularity requirement must be "read in harmony" with Rule 8. *Id.* The purpose of Rule 9(b)'s particularity requirement is to provide the defendant fair notice of the substance of the plaintiff's claim in order that the defendant may prepare a responsive pleading.

Reviewing Plaintiffs' second amended complaint, the Court finds that Plaintiffs have sufficiently pleaded their fraud claim to satisfy the notice requirement. The complaint, including the

24

supporting factual allegations, specify the parties and participants in the alleged fraud (Wael Amhad, Anna Garcia, and the Ahmad Law Office); the representations made (that Plaintiffs were eligible for benefits relating to an Application for Cancellation of Removal, and thus, Form 42Bs, were being lawfully filed on their behalf, and that the Plaintiffs were entitled to obtain an employment authorization); the dates of the alleged representations (in July, October, and November of 2013 with respect to Mr. Macias Ramirez, in September of 2012 and December of 2013 with respect to Mr. Nevada Martinez); the nature in which the statements are alleged to be misleading or false (Plaintiffs were not eligible for the Cancellation of Removal Benefits and the Form 42Bs were not being filed lawfully); the fraudulent intent of the Defendants (to earn legal fees); reliance on the fraud (Plaintiffs were induced into signing their Form 42Bs and allowing Defendants to represent Plaintiffs in their immigration proceedings); and the injury resulting from the fraud (Plaintiffs have been exposed to civil and criminal liability and paid legal fees for services they were not entitled to receive). [DE 21 at 18-22].

The Court must take all well pleaded facts in the complaint as true and view them in the light most favorable to Plaintiffs. *Jenkins v. McKeithen,* 395 U.S. 411 (1969). Plaintiffs' complaint contains sufficient facts to support their claim of fraud. The

discovery process will provide Plaintiffs an opportunity to obtain further any existing evidence in support of these facts, much of which may be in Defendants' possession and/or control.

### 3. Breach of Fiduciary Duty

Plaintiffs assert a breach of fiduciary duty claim (Count III) against Defendants. Defendants move to dismiss this claim for failure to state a claim upon which relief may be granted although provide no argument in support of their request for dismissal.

It is well recognized that a fiduciary relationship exists between an attorney and a client. *Branham v. Stewart*, 307 S.W.3d 94, 106 (Ky. 2010). "Since the relationship of attorney-client is one fiduciary in nature, the attorney has the duty to exercise in all his relationships with this client-principal the most scrupulous honor, good faith and fidelity to his client's interest." *Daugherty v. Runner,* 581 S.W.2d 12, 16 (Ky. Ct. App. 1978); *see also Clark v. Burden,* 917 S.W.2d 574, 575 (Ky. 1996). Indeed, a fiduciary duty is "the highest order of duty imposed by law." *In re Sallee,* 286 F.3d 878, 891 (6th Cir. 2002).

The Court finds that Plaintiffs have stated a claim for breach of fiduciary duty against Defendants upon which relief can be granted sufficient to survive Defendants' motion to dismiss on this claim. Plaintiffs allege that Defendants represented Plaintiffs as their attorneys in immigration proceedings. [DE 21

at 22-23]. Plaintiffs further allege that, in the course of the representation, Defendants breached their fiduciary duty to Plaintiffs by preparing and submitting applications for immigration benefits that the clients were not eligible to receive, all while concealing this fact from plaintiffs, and while concealing the fact that said applications had been filed with the USCIS from the Immigration Court. *Id.* Plaintiffs allege that Defendants' breach of their fiduciary duties proximately caused damages to Plaintiffs. *Id.* Defendants' request to dismiss Plaintiffs' breach of fiduciary duty claim will be denied.

### 4. KCPA

Plaintiffs assert a claim for violations of the KCPA relating to Defendants' alleged practice of selling legal services in violation of KRS 367.170. In particular, Plaintiffs allege that:

> The Defendants' practice of selling the legal service of filing baseless applications for Cancellation of Removal for the purpose of obtaining Employment Authorizations for their clients with the knowledge that their clients were not aware that they did not qualify to file said applications or to receive the applied for immigration benefits constitutes unfair, false, and/or deceptive acts and/or practices as defined by KRS § 367.170.

DE 21 at ¶ 92.

The KCPA "is remedial legislation enacted to give consumers broad protection from illegal acts." *Skilcraft Sheetmetal, Inc. v. Kentucky Mach., Inc.*, 836 S.W.2d 907, 909 (Ky. Ct. App.

27

1992)(citing *Stevens v. Motorists Mut. Ins. Co.,* 759 S.W.2d 819, 821 (Ky. 1988)).  It provides a cause of action for "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by KRS 367.170."  KRS 367.220(1).  To assert a KCPA cause of action, Plaintiffs must allege that Defendants engaged in "[u]nfair false, misleading, or deceptive acts or practices in the conduct of any trade or commerce."  KRS 367.170.  "Trade" and "commerce" is defined by the KCPA as "the advertising, offering for sale, or distribution of any services and any property, tangible or intangible, real, person or mixed, and any other article, commodity, or thing of value, and shall include any trade or commerce directly or indirectly affecting the people of this Commonwealth."  KRS 367.110(2).

Defendants maintain that this claim must be dismissed because Plaintiffs' allegations arise directly from Defendants' performance of legal services, and the KCPA is not applicable to allegations related to professional liability.  [DE 21-1 at 14-16].  In support of its motion to dismiss, Defendants cite two cases *Simmons v. Stephenson*, 84 S.W.3d 926 (Ky. Ct. App. 2002) and *Barnett v. Mercy Health Partners-Lourdes*, 233 S.W.3d 723 (Ky. Ct. App. 2007), wherein the Kentucky Court of Appeals held that medical

28

malpractice claims may not be brought under the KCPA because the actual practice of medicine does not affect trade or commerce.

The Court agrees with the reasoning of the Kentucky Court of Appeals that the KCPA does not apply to isolated incidences of medical malpractice but finds those cases to be distinguishable to the instant case. Here, Plaintiffs are not alleging a single incident of legal malpractice, rather, a fair reading of Plaintiffs' complaint is that the KCPA claim actually arises out of Defendants' alleged practice of selling alleged unfair or fraudulent legal services, that is, out of the commercial, advertising, or entrepreneurial aspect of the practice of law. [DE 21 at ¶92]. Therefore, while discovery is needed to determine the exact nature of Defendants' alleged method of obtaining and retaining clients and whether the KCPA has in fact been violated, given the KCPA's purpose to protect consumers from deceptive acts and practices, Plaintiffs have sufficiently stated a claim for a violation of the KCPA to survive Defendants' motion to dismiss. *See Barnett*, 233 S.W.3d 723, 730 (Ky. App. 2007)("we hold that, in order for the Act to apply, there must be some allegations that the actions complained of were part of the business aspect of the practice of medicine. Such actions would include advertising for a particular procedure or surgery then failing to advise the patient of the risks involved or of alternative treatment; entering into a financial agreement that would increase profits to the

possible detriment of patients; or advertising services at a
particular cost then charging at a different rate.").

### 5. *Unjust Enrichment*

Plaintiffs allege a claim of unjust enrichment in Count V of
their complaint.[5] Defendants move to dismiss this claims on the
basis that Plaintiffs have failed to allege a single element of
either cause of action. [DE 28-1 at 17-18].

To state a claim for unjust enrichment under Kentucky law,
the claimant must allege: (1) it conferred a benefit on the
defendant; (2) an appreciation or knowledge by defendant of the
benefit; and (3) the defendant must accept or retain the benefit
under such circumstances to make the retention inequitable without
payment of its value. *Mattingly v. Primerica Life Ins. Co.*, No.
06-cv-479, 2007 WL 2792197, at *7 (W.D. Ky. Sept. 21, 2007)(citing
26 Samuel Williston & Richard A. Lord, *A Treatise on the Law of
Contracts* § 68:5 (4th ed. 1993 & Supp.2007) (internal citations
omitted); *see also Jones v. Sparks,* 297 S.W.3d 73, 78 (Ky. Ct.
App. 2009).

The Court finds that the complaint in this case has alleged
numerous facts that, if true, make Plaintiffs' assertion of an
unjust enrichment claim plausible. If Plaintiffs did in fact make
payments to Defendants for legal services that had no basis in law

---

[5] The heading of Count V of the complaint states "Unjust Enrichment and
Quantum Meruit," however, Plaintiffs state this was a "scrivener's error" and
abandons any claim for "quantum meruit." [DE 43 at 22].

or fact, then Defendants here were unjustly enriched. Thus, Plaintiffs' claim for unjust enrichment will not be dismissed.

For all of the reasons stated above, Defendants' Motion to Dismiss [DE 28] will be denied.

II.  *Motion for Joinder [DE 37] and Motion to Amend [DE 45]*

This matter is also currently before the Court upon Plaintiff's Third Motion for Joinder to join three additional plaintiffs, Jorge Rodriguez-Limon, Almaquio Viveras Arenas, and Israel Aguas Hernandez, pursuant to Fed. R. Civ. P. 20, for all counts of the complaint. [DE 37]. Plaintiffs allege that the three individuals to be joined are victims of the same scheme alleged to have been perpetrated by Defendants and that each asserts the same causes of action and has identical interests as the existing Plaintiffs. [DE 37-1 at 3-7, Exhibits A-K]. Plaintiffs have also filed a Fourth Motion for Leave to Amend the Complaint to add facts concerning dates each named plaintiff learned of his or her damages and/or the dates Defendants' representation ceased for each named Plaintiff as well as to correct typographical errors.[6] [DE 45]. Because the Fourth Motion to Amend subsumes the changes in the Third Amended Complaint, the Court will deny Plaintiff's Third Motion for Joinder [DE 37] as moot and consider only the Fourth Motion to Amend. Furthermore,

---

[6] In the Fourth Amended Complaint, Plaintiffs also seek to correct the following typographical errors: (1) changing a reference of 26 U.S.C. § 1546 to 18 U.S.C. § 1546; and (2) changing 8 C.F.R. §274a.12(c)(8) to 8 C.F.R. 274a.12(c)(10)).

having reviewed the motion, response, and reply on Plaintiffs'
Motion for Joinder [DE 37-1, 39, 41], the Court is adequately
advised as to the parties' arguments in favor and against joinder
and amending the complaint without need for additional briefing.

>    *A. Standard*

Because Plaintiffs seek to join additional parties to this
action pursuant to Fed. R. Civ. P. 20 (Permissive Joinder of
Parties) and also seek to amend pursuant to Fed. R. Civ. P. 15
(Amended and Supplemental Pleadings), the Court will consider
Plaintiffs' Fourth Motion for Leave to Amend [DE 45] in light of
both rules.

Rule 15(a)(2) provides that "a party may amends its pleading
only with the opposing party's written consent or the court's
leave." Fed. R. Civ. P. 15(a)(2). The rule further provides that
"[t]he court should freely give leave when justice so requires."
*Id*. Leave to amend should freely be given as long as the amended
pleading does not involve (1) undue delay; (2) bad faith; (3)
repeated failure to cure deficiencies in previous amendments; (4)
undue prejudice to the opposing party; or (5) futility of
amendment. *Meave v. Rincon Mexicano, Inc.*, No. 5:13-CV-334, 2014
WL 3388835, at *1 (E.D. Ky. July 9, 2014)(citing *Foman v. Davis,*
371 U.S. 178, 182 (1962)); *see also Foman v. Davis,* 371 U.S. 178,
182 (1962) ("Rule 15(a)(2) favors granting leave to amend to allow
a plaintiff "an opportunity to test his claim on the merits.").

32

The grant or denial of an opportunity to amend is within the discretion of the district court. *Dana Corporation v. Blue Cross & Blue Shield Mutual,* 900 F.2d 882, 888 (6th Cir. 1990).

Joinder of persons as plaintiffs is governed by Rule 20, which allows the joinder of more than one person as plaintiff if:

> (A) [the persons] assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

> (B) any question of law or fact common to all plaintiffs will arise in the action.

Fed.R.Civ.P. 20(a)(1)(A),(B).

B. *Discussion*

As the Court understands, Defendants' chief argument in response to Plaintiffs' Motion for Joinder [DE 37] pursuant to Rule 15 is that they will be unduly prejudiced if the Court allows Plaintiffs to amend their complaint to join additional plaintiffs because Defendants' Motion to Dismiss and Motion to Strike Class Action Allegations are pending before the Court. [DE 39 at 3-4]. Defendants argue that an amended complaint "may require all of the current briefing to begin anew relative to a third set of amended allegations." *Id.* However, as explained previously, the Court finds that the amended allegations, which merely designate additional parties, add facts concerning dates each named plaintiff learned of their damages, and corrects typographical

33

errors, to be substantially identical to Plaintiffs' second amended complaint and to have no bearing on the Court's analysis of Defendants' motion to dismiss. For this reason, and in the interest of moving this case forward, the Court finds no need to delay ruling on the motion to dismiss, and that ruling on Defendants' motion to dismiss at this juncture actually counters Defendants' argument that they are unduly prejudiced by the motion for joinder. Moreover, as this case is in its infancy, allowing Plaintiffs to join additional plaintiffs to this action will not unduly prejudice Defendants or unduly delay this action.[7]

In addition to prejudice and delay, futility may provide a basis for denying leave to amend. The Sixth Circuit has ruled that "[i]t is well settled that the district court may deny a motion for leave to amend a complaint if such complaint, as amended, could not withstand a motion to dismiss." *Neighborhood Dev. Corp. v. Advisory Council on Historic Preservation,* 632 F.2d 21, 23 (6th Cir. 1980); *Matthews v. Jones,* 35 F.3d 1046, 1050 (6th Cir. 1994). For the reasons stated herein, the Court cannot find that the claims set forth in Plaintiffs' Fourth Amended Complaint, which is nearly identical to the Second Amended Complaint, to be futile at this time. The Court also finds no basis for disallowing

---

[7] Defendants' argument that the Motion for Joinder should be denied because Plaintiffs failed to tender a proposed third amended complaint is moot because the proposed third amended complaint has now been filed. [DE 42].

the amendment based on Plaintiffs' failure to cure deficiencies in prior amendments or any bad faith on the part of Plaintiffs.

The Court also finds that joinder of the additional plaintiffs, Jorge Rodriguez-Limon, Almaquio Viveras Arenas, and Israel Aguas Hernandez, to meet the requirements of Rule 20. "Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966). The Sixth Circuit has held that, in applying Rule 20, the terms "transaction" and "occurrence" are to be given a broad and liberal interpretation. *Lasa per L'Industria del Marmo Societa per Azioni v. Alexander*, 414 F.2d 143, 147 (6th Cir. 1969). "The purpose of Rule 20(a) is to promote judicial economy and trial convenience." *Evans v. Midland Funding, LLC*, 574 F. Supp. 2d 808, 811 (S.D. Ohio 2008) (citation omitted). Because the relief requested by each of three individuals arises from the same transactions and occurrences common to all existing plaintiffs, and the questions of law and fact are identical to all parties, *see* DE 37-1, Plaintiffs' Motion for Leave to Amend [DE 45] will be granted.

*Conclusion*

Accordingly, **IT IS ORDERED** as follows:

(1)  Defendants' Motion to Strike the Exhibits from

Plaintiffs' Response to Defendants' Motion to Dismiss is **GRANTED.** [DE 52];

(2)  Defendants' Motion to Dismiss [DE 28] is **DENIED;**

(3)  Plaintiffs' Third Motion for Joinder of Plaintiffs [DE 37] is **DENIED AS MOOT;**

(4)  Plaintiffs' Fourth Motion for Leave to Amend Complaint [DE 45] is **GRANTED;**

(5)  Plaintiffs are granted **LEAVE TO FILE** an amended complaint to clarify the distinction requirement of its RICO claim in accordance with the instructions set forth herein within **five (5) days** of the entry of this Order;

(6)  Within **fourteen (14) days** of Plaintiffs filing their amended complaint, Defendants must **FILE** an Answer.

This the 15th day of April, 2016.



**Signed By:**

_**Joseph M. Hood**_

**Senior U.S. District Judge**